**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 97-11128

IN THE MATTER OF:
PRO-SNAX DISTRIBUTORS, INC.

Debtor.

ANDREWS & KURTH L.L.P.,

Appellant,

versus

FAMILY SNACKS, INC. doing business as
GUY'S FOODS, MISSION FOODS/FIESTA JIMINEZ, a
division of GRUMA, INC., and GUILTLESS GOURMET

Appellees.

Appeal from the United States District Court
for the Northern District of Texas

October 20, 1998

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This case, one of first impression in this circuit, calls for us to determine whether a Chapter

11 debtor's attorney may be compensated for work done after the appointment of a trustee under §

330(a) of the Bankruptcy Code. It arises from a lengthy and acrimonious dispute between a debtor,

Pro-Snax Distributors, Inc. ("Pro-Snax" or "Debtor"), and several of its creditors in the wake of the

filing of an involuntary Chapter 7 petition. Mission Foods/Fiesta Jiminez, a division of Gruma, Inc., Family Snacks, Inc. d/b/a Guy's Foods, and Guiltless Gourmet (together, the "Petitioning Creditors" or "Appellees") seek to restrict the payment of fees to the law firm of Andrews & Kurth L.L.P. ("A&K" or "Appellant"), contending that the legal services rendered by A&K after the appointment of a Chapter 11 trustee were barred by statute. Deciding the case on the equities, the bankruptcy court found in favor of A&K and awarded fees for some of the services rendered. The district court reversed, ruling that, notwithstanding legislative history suggesting a contrary intent, the plain language of the statute at issue precluded an award of fees to A&K. A&K timely appealed this ruling. While sympathizing with A&K's plight and acknowledging reports that Congress plans to amend the statute at issue to cover an award of fees in exactly this situation, we are bound by the language of the statute precluding such an award at present and thus affirm the judgment of the district court.

## BACKGROUND

I.      Procedural History

On August 10, 1995, the Petitioning Creditors filed an involuntary petition under Chapter 7 against Pro-Snax, and an interim Chapter 7 trustee was appointed on August 31, 1995.[1] From the earliest stages of the bankruptcy proceeding, it was obvious to the bankruptcy court that this case would present "a constant litigation background" because mutual suspicions between the Debtor and the Petitioning Creditors would prohibit any meaningful negotiations between them. On September 13, 1995, the Debtor exercised its statutory right by consenting to relief under Chapter 11 and

---

[1] At about the same time, the Petitioning Creditors requested and received an injunction against the Debtor to prohibit it from engaging in a proposed settlement with its other creditors to distribute funds from the estate before a disbursement plan had been filed.

2

converted the proceeding thereto. Prior to the filing of the involuntary petition and through the conversion to a Chapter 11 action, A&K had provided legal services to the Debtor.

On October 16, 1995, the bankruptcy court denied the Petitioning Creditors' motion to reconvert the proceeding to Chapter 7 and appointed a Chapter 11 trustee to oversee the case. Concurrently, the Debtor filed its first plan of reorganization and disclosure statement. A&K assisted in the preparation of this plan.[2] Hearings on the re-organization plan were held on February 13, 1996, and, based largely on the objections of the Petitioning Creditors, the plan was denied confirmation.[3] Immediately thereafter, the Petitioning Creditors again moved for reconversion to Chapter 7, and this time, on February 20, 1996, the bankruptcy court granted the motion.

A&K's employment as counsel for the Debtor was authorized by the bankruptcy court *nunc pro tunc* on July 1, 1996, the date on which A&K filed its Application for Compensation and Reimbursement ("Fee Application"), for the period September 13, 1995 through May 31, 1996. In the Fee Application, A&K sought payment of $44,638 in fees and $10,725.37 in expenses. The Petitioning Creditors objected to the payment of fees, but on September 30, 1996, after a hearing on the subject, the bankruptcy court awarded fees and expenses to A&K.[4]

---

[2]Appellant contends that the filing of this plan was approved by the newly-appointed trustee, but Appellee correctly observes that nothing in the record supports this claim. In any event, the Debtor filed an amended plan and disclosure statement on November 29, 1995.

[3] The other creditors of the estate apparently supported the Debtor's plan. See In re Pro-Snax Distributors, Inc., 204 B.R. 492, 494 (Bankr. N.D. Tex. 1996).

[4] The award for fees was reduced to $30,000 and expenses to $7,500, against which there was a pre-existing $10,000 credit from the original retainer, making $27,500 the total balance sought by A&K.

On October 2, 1996, the Petitioning Creditors filed a Motion for Reconsideration of the Order. The motion was denied on November 20, 1996, and the trustee paid A&K's fees and expenses out of the estate. At no time did the trustee or any other creditor object to A&K's Fee Application or the bankruptcy court's order.

The Petitioning Creditors filed a Notice of Appeal to the United States District Court for the Northern District of Texas. That court reversed the bankruptcy court's ruling that fees could be awarded for services provided after the appointment of the Chapter 11 Trustee, and remanded the case for a recalculation of the fee award. See Family Snacks, Inc. v. Andrews & Kurth, L.L.P., 212 B.R. 834, 835 (N.D. Tex. 1997). A&K then timely filed this appeal.

II.     Bankruptcy Court's Holding

The crux of this dispute centers on whether the Bankruptcy Code provides for an award of attorneys' fees to A&K for its services rendered to the Debtor in this case. The key statutory provision construing this issue is 11 U.S.C. § 330. After acknowledging that 11 U.S.C. § 503(b)(2) provides an administrative priority (i.e., over unsecured creditors) for fees awarded under 11 U.S.C. § 330, the bankruptcy court concluded—on the basis of extensive findings on the record—that A&K could be awarded compensation from the bankruptcy estate under § 330(a)(1) for work done as "the debtor's attorney" after the appointment of the Chapter 11 trustee. See In re Pro-Snax Distributors, Inc., 204 B.R. 492, 495-97 (Bankr. N.D. Tex. 1996). Section 330(a)(1) provides, in pertinent part, that

> [a]fter notice to the parties in interest and the United States Trustee and a hearing,
> . . . the court may award to a trustee, an examiner, a professional person employed
> under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney . . . ; and

(B) reimbursement for actual, necessary expenses.[5]

11 U.S.C. § 330(a)(1).

The bankruptcy court noted that the current version of § 330(a) did not explicitly provide for an award payable to the "debtor's attorney"—and indeed that the words "or to the debtor's attorney" were removed from the statute by the 1994 amendments—but nevertheless concluded that the statute was vague and did not preclude an award of compensation in A&K's favor. In particular, the court (1) distinguished two cases urged by the Petitioning Creditors as advocating a narrow reading of amended § 330(a)(1) (*i.e.*, which precluded such compensation);[6] (2) voiced its reluctance to interpret vague statutory language to effect a major change in bankruptcy practice that was not the subject of some discussion in legislative history; and (3) noted that many courts and commentators have concluded that amended § 330(a)(1) should not be read to foreclose compensation to a debtor's

---

[5]Two aspects of § 330(a)(1) need to be addressed at the outset. First, as the statute presently exists, the word "or" does not appear between the words "examiner" and "a professional employed under section 327." The most benign explanation for this error is that it is a grammatical error, but as discussed below, the parties dispute this.

Second, prior to the amendments made to § 330 in 1994, the words "or to the debtor's attorney" followed the words "a professional person employed under section 327" as follows:

(a) . . . the court may award to a trustee, to an examiner, to a professional person employed under section 327 . . . , **or to the debtor's attorney**--

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney . . .

(emphasis added). Thus, prior to 1994, § 330(a)(1) explicitly authorized an award of fees to the debtor's attorney.

[6]The cases relied on by the Petitioning Creditors were In re NRG Resources, Inc., 64 B.R. 643 (W.D. La. 1986), and In re Friedland, 182 B.R. 576 (Bankr. D. Colo. 1995).

attorney for work done after the appointment of a Chapter 11 trustee—*i.e.,* because such an interpretation "would represent a fundamental change in the law that is clearly unintended and extremely unlikely." Id. at 496.

In holding as it did, the bankruptcy court rejected the Petitioning Creditors' argument that because § 330(a)(1) no longer contained the words "or to the debtor's attorney," a fee award to A&K could only be sustained if A&K qualified as "a professional person employed under section 327." Id. at 494. Section 327 provides, in pertinent part, that

> (a) [e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employee one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Although by its terms § 327(a) applies only to professionals employed by the "trustee," 11 U.S.C. § 1107(a) provides that a "debtor-in-possession" has "all the rights . . . of a trustee serving in a case under this chapter." While not denying that under these provisions Pro-Snax, as a debtor-in-possession, was empowered to retain counsel at the expense of the bankruptcy estate, the Petitioning Creditors argued that this right existed only so long as Pro-Snax qualified as a debtor-in-possession. In their view, (1) A&K's right to compensation at the expense of the estate (*i.e.,* under § 330(a)(1)'s allowance for fees in favor of "professionals employed under section 327") ended with the appointment of the Chapter 11 trustee—which automatically terminated Pro-Snax's status as a debtor-in-possession; and (2) § 330 did not provide an alternative basis to award A&K compensation (*e.g.,* for work done as "the debtor's attorney"). For these reasons, the Petitioning Creditors concluded that A&K was entitled only to $3,047 in fees, which represented the $13,047 earned by A&K prior to the appointment of the Chapter 11 trustee, reduced by A&K's $10,000 retainer. As

6

discussed above, the bankruptcy court rejected this narrow interpretation of § 330(a)(1), as espoused by the Petitioning Creditors.

Finally, after determining that § 330(a)(1) did not preclude an award of fees in favor of A&K, the bankruptcy court identified the standard that "has evolved to determine when an attorney should be allowed compensation from the estate for work done after the appointment of a trustee." Id. at 496. Following the lead of other courts, the bankruptcy court determined that an attorney's work must benefit the estate before any compensation is payable, and that any fee request should be reduced for work that is duplicative of the trustee's efforts; obstructs or impedes the administration of the estate; or is inconsistent with the debtor's duties.[7] The bankruptcy court noted that normally attorneys' fees are not compensable after a trustee is appointed, but that in this case it was reasonable for the debtor to try to confirm a plan through the efforts of its attorney, A&K. See id. Although the court expressed certain misgivings about the benefits conferred upon the estate by A&K,[8] the court nonetheless concluded that a debtor's attorney cannot guarantee success, and that A&K "partially benefitted the estate in the area[s] of liquidation of inventory, business operations, case administration, claims objections, attempted settlement, disclosure statement, and plan prosecution." Id. In addition, the court felt it necessary to employ a "continuing cost-benefit analysis," stating that A&K should not be compensated for work done if—at the time the work was performed—the reasonable chance of success (*i.e.,* for confirmation of the plan) was outweighed by the cost in

---

[7]See also § 330(a)(4)(A), which provides that "the court shall not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."

[8] The court rejected A&K's contention that it had been responsible for reducing the claim of Mission Foods/Fiesta Jiminez by $500,000, found that A&K's opinion that Pro-Snax could qualify as a small debtor was flawed, and noted that Pro-Snax's Chapter 11 plan was never confirmed.

pursuing the action. In particular, the court noted that "[w]here a trustee has been appointed, the time and costs of prosecuting a [Chapter 11] liquidating plan should not exceed the comparable results and swiftness that would normally be accomplished by a straight Chapter 7 liquidation." Id. Taking all these factors into account, the court allowed fees to A&K in the reduced amount of $30,000 and expenses in the reduced amount of $7,500. After the bankruptcy court denied their motion for reconsideration, the Petitioning Creditors appealed.

III.    District Court's Holding

The district court reversed the judgment of the bankruptcy court. See Family Snacks, 212 B.R. at 835. The district court agreed with the Petitioning Creditors' narrow interpretation of § 330, concluding that A&K could not be compensated as counsel for the Debtor—from assets of the estate—for services rendered after the Chapter 11 trustee was appointed. After noting that the American Rule of attorney's fees is applicable to bankruptcy proceedings and that, under the Rule, each party generally bears its own litigation expenses unless a statute authorizes the fees to be shifted, the court concluded that the plain language of the current § 330(a)(1)—which does not include an explicit provision allowing fees to a "debtor's attorney"—cannot sustain an award to A&K for work done as "counsel for the debtor." See id. at 839. According to the court, the only indication that Congress intended to set aside the American Rule in this circumstance—that is, the fact that, prior to 1994, § 330(a) explicitly allowed compensation to "the debtor's attorney"—fell woefully short of the "explicit congressional authorization" that is required to circumvent the American Rule. Further, the court observed that the award to A&K could not be sustained under the bankruptcy court's inherent powers, as this action did not fall into any of the categories of cases warranting an exception to the American Rule—for example, cases involving bad faith on the part of the losing party.

8

Although it reversed the award of fees under § 330, the district court remanded the case for a recalculation of the fees in light of the Petitioning Creditors' concession that A&K was entitled to compensation for work done prior to the appointment of the Chapter 11 trustee. The court instructed the bankruptcy court to recalculate the fee against the backdrop of the American Rule, any statutory exceptions to the Rule, and the usual standards for the award of fees to professionals in bankruptcy cases. With respect to the final factor, the district court observed that while the bankruptcy court had already addressed some of those standards, it should more closely examine the most critical one—degree of success.[9] See id. (citing Farrar v. Hobby, 506 U.S. 103, 114 (1992)). A&K timely appealed the district court's order reversing and remanding the case.

---

[9] The district court noted that the bankruptcy court had already found that "the debtor did not have many successes in this case in terms of accomplishment," Family Snacks, 212 B.R. at 839, implying that any award should be measured against this reality. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

## DISCUSSION

I.      Appropriate Appellate Jurisdiction

We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied. See In re Gamble, 143 F.3d 223, 225 (5th Cir. 1998). A bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo. See id. The issues on appeal in this case are purely legal ones.

Before addressing the merits of this dispute, we must first pause to consider the propriety of our subject matter jurisdiction over the case. Our jurisdiction over appeals from bankruptcy courts extends to "all final decisions, judgments, orders, and decrees entered [by the district court]." 28 U.S.C. § 158(d). Unlike a district court, which has discretion to take jurisdiction over interlocutory appeals from the bankruptcy court, see 28 U.S.C. § 158(a), we have no such discretion and are limited to reviewing only final orders.

In this case, the district court has remanded its decision to the bankruptcy court for a recalculation of the amount owed to A&K. As such, we refer to the two-pronged inquiry enunciated in In re Greene County Hospital, 835 F.2d 589 (5th Cir.), reh'g denied, en banc, 841 F.2d 396, and cert. denied sub nom. Path-Science Labs., Inc. v. Green County Hospital, 488 U.S. 820 (1988), to determine whether this remand is both final and subject to appeal. See Greene County Hospital, 835 F.2d at 595. First, we must determine whether the order of the bankruptcy court itself is final in character, see id. (citation omitted); if it is, we must then decide if the district court's remand requires extensive further proceedings. See id. (citation omitted). Only the second prong—the nature of the remand—is at issue in this case.

10

"A remand from the district court reversing a final order of the bankruptcy court may . . . be deemed final if it leaves only a ministerial task for the bankruptcy court." Id. (citation omitted); see also Travelers Insurance Co. v. KCC-Leawood Corporate Manor I, 908 F.2d 343, 345 (8th Cir. 1990) ("[R]emand orders requiring only mechanical, computational, or ministerial tasks may be considered final."). "While in some cases the calculation of attorneys' fees may be a ministerial duty collateral to the merits of the action," In re Miscott Corp., 848 F.2d 1190, 1193 (11th Cir. 1988), a remand requiring such a calculation is not final if it necessitates further factual development or other significant judicial activity involving the exercise of considerable discretion, see Travelers, 908 F.2d at 345, or is likely to generate a new appeal or affect the issue that the disappointed party wants to raise on appeal from the order of remand. See In re Schneider, 873 F.2d 1155 (8th Cir. 1989).

Both parties before us contend that we have jurisdiction over the case, albeit for vastly different reasons,[10] but jurisdiction is of course not something to which the parties to a controversy may simply agree. In this case, however, this court does have subject matter jurisdiction over the

---

[10] A&K contends that the district court's remand order—after (1) reversing on § 330 grounds the bankruptcy court's award of fees earned after the appointment of the Chapter 11 trustee and (2) concluding that no exceptions to the American Rule were applicable—merely left the bankruptcy court with a "mechanical, computational, or ministerial" task to perform, that is, a reduction of the fee award to include only those fees earned before the trustee was appointed. A&K observes that a remand to the bankruptcy court at this juncture would most assuredly result in a second appeal and therefore be a waste of time and other judicial resources, given that their assertion that (1) the order to reverse the $30,000 fee award was based on an incorrect interpretation of § 330, and (2) the standard identified by the district court to determine the appropriate amount (i.e., "[consider the debtor's] degree of success") will still be live issues.

Likewise, the Petitioning Creditors also urge us to assume jurisdiction, claiming that the bankruptcy court's remaining duties are purely computational and require only that the court enter an award of $3,047 to A&K ($13,047 pre-trustee fees minus the $10,000 retainer). In addition, the Petitioning Creditors claim that the instant dispute over A&K's fees is the only remaining controversy preventing filing of the final report and payment to the creditors, and that further delay in resolving this dispute is unwarranted.

controversy. The district court's remand order neither necessitates further fact-finding nor the use of substantial discretion on the part of the bankruptcy court.[11] Indeed, the district court's order plainly disallows any fees earned after the appointment of the Chapter 11 trustee, and any discretion given to the bankruptcy court in determining the amount of pre-trustee fees is of minimal significance, given that such discretion (*i.e.,* "[consider the debtor's] degree of success") could only be used to reduce the maximum possible award of $3,047. For these reasons, the judgment of the district court conclusively determined, in all material respects, the key questions presented for our review, and thus we turn to the merits of the parties' arguments.

II.     The Construction of 11 U.S.C. § 330

Section 330 of the Bankruptcy Code speaks to the compensation of officers employed by the estate of the debtor. The issue before this court, then, is whether the bankruptcy court may award fees and expenses to an attorney "employed under section 327 or 1103," even though the statute does not include attorneys in its list of officers who may be compensated.

The district court read the statute verbatim and held that compensation for attorneys is expressly precluded by the statute. Before this court, A&K offers essentially two arguments to contend that the district court incorrectly decided that § 330 precludes awarding fees to a debtor's attorney after the appointment of a Chapter 11 trustee, and we review each in turn.

---

[11] Although the seminal case Radio Station WOW, Inc. v. Johnson, 326 U.S. 120 (1945), involved a question of final judgment from a state court, its foundation principle—that a decision is final when all that remains to be done on remand is to perform an accounting to bring the decision in line with the higher court's judgment, see id. at 131-32—supports the conclusion here that the district court's judgment is final and that to await the bankruptcy court's determination of fees would be pointless. Cf. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 480 (1975) (listing different types of state court final decisions and enumerating the Radio Station WOW variety as ones in which the federal issue "will survive and require decision regardless of the outcome of future state-court proceedings").

A.    *Congressional Intent*

First, although A&K acknowledges that in 1994 Congress removed the words "the debtor's attorney" from § 330's list of compensable officers, the Appellant posits that this omission was clearly inadvertent in light of the lack of legislative history devoted to it. In addition, A&K observes that a prominent commentator has expressed the same opinion. See 3 *Collier on Bankruptcy* ¶ 330.LH[5] at 330-77 ("Because the change is inconsistent with current case law and the legislative history of § 330 does not support such drastic change, courts should construe the deletion as unintended"). Collier has in fact concluded—consistent with the standards expressed in §§ 330(a)(3)(C) and (a)(4)(A)—that if the services of a debtor's attorney "are reasonably likely to benefit the debtor's estate, they should be compensable." 2 *Collier on Bankruptcy* ¶ 330.04 at 330-43. In addition, A&K alerts us to the Second Circuit's decision in In re Ames Dep't Stores, Inc., 76 F.3d 66 (2d Cir. 1996), in which the court not only agreed with Collier's assessment, but stated that such an interpretation was consistent with "the statute's aims that attorneys be reasonably compensated and that future attorneys not be deterred from taking bankruptcy cases due to failure to pay adequate compensation."[12] Id. at 71-72; see also In re Miller, 211 B.R. 399, 402 (Bankr. D. Kan. 1997) (finding that the statute as currently written is ambiguous and that the absence of any mention in the

---

[12] As support for its contention that we should confine ourselves to the statute's plain language, the Petitioning Creditors argue that A&K's reliance on dicta from Ames is misplaced, as the Second Circuit—while stating that it was "inclined" to agree that the words "or to the debtor's attorney" were inadvertently omitted from § 330—nevertheless disallowed the fee award at issue based on a lack of benefit to the estate from the attorney's services. This argument is unavailing, however, because the Second Circuit's assessment of the amended statute—albeit contained in dicta—is nevertheless probative of the issue of whether the omission of the words "or to the debtor's attorney" was intended.

13

legislative history regarding the omission of "to the debtor's attorney" obviates in favor of the conclusion that compensation is permissible).

The Petitioning Creditors of course urge us (as they did below) that because § 330(a)(1) no longer includes the words "debtor's attorney" in its list of compensable persons, A&K can be compensated only for work done as a "professional person employed under section 327." The Petitioning Creditors concede that §§ 330, 327, and 1107 in combination authorize an award of fees earned by A&K while Pro-Snax was a debtor-in-possession but insist that once the Chapter 11 trustee was appointed (and Pro-Snax ceased to be a debtor-in-possession), A&K was no longer a "professional person" entitled to compensation.

Notwithstanding this straightforward reading of the statute, A&K attempts to bolster its contention that Congress inadvertently omitted "the debtor's attorney" from § 330(a)(1) by comparing the two relevant clauses of § 330—

> (a)(1) the court may award to a trustee, an examiner, a professional person employed under section 327–
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney"

—and argues that the word "attorney" in the second clause is rendered superfluous if, as the Petitioning Creditors claim, a debtor's attorney is compensable only so long as it qualifies as a "professional person employed under section 327." A&K concludes that the word "attorney" should not be superseded in this manner, and that any ambiguity created by the omission of the words "or to the debtor's attorney" from the first clause should be interpreted in favor of allowing an award of fees to debtor's counsel, especially in light of the fact that such compensation was expressly allowed

14

prior to 1994.[13]  The Petitioning Creditors argue that the word "attorney" in § 330(a)(1)(A) is not rendered superfluous after the 1994 amendments as A&K claims.  The Petitioning Creditors guide us to § 330(a)(4)(B), which provides that

> In a Chapter 12 or Chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to <u>the debtor's attorney</u> for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B) (emphasis added).  The Petitioning Creditors claim that in combination these two provisions allow compensation to an individual debtor's attorney in a Chapter 12 or 13 case for "actual, necessary services;" establish that the word "attorney" in § 330(a)(1)(A) is not meaningless; and conclusively show that the words "or to the debtor's attorney" do not have to be read back into § 330(a)(1) (*i.e.,* to allow post-trustee compensation to a debtor's attorney in Chapter 11 cases, <u>which expressly is not allowed by the current statute</u>).

While this argument somewhat defuses A&K's claim that the word "attorney" in § 330(a)(1)(A) is superfluous, it does not explain why a grammatical error currently exists in the statute.  The current statute omits the word "or" between the words "examiner" and "professional person"(in the first clause quoted above).  That error is perhaps the best evidence that the words "or to the debtor's attorney" were inadvertently excised from § 330(a)(1).

The Petitioning Creditors also argue that the deletion of the words "or to the debtor's attorney" was consistent with the stated legislative objective of the 1994 amendments—that is, to

---

[13]A&K makes the obvious point here that prior to 1994—when § 330 contained the words "or to the debtor's attorney" in the first clause—the word "attorney" in the second clause referred to that earlier reference to "the debtor's attorney."  In addition, A&K claims that two bills are currently pending before Congress that add the words "or to the debtor's attorney" back to the first clause of the statute.

promote "greater uniformity" in the standards used by courts to award professional fees in bankruptcy cases. The Petitioning Creditors claim that such "uniformity" was desirable in light of conflicting authority on whether a debtor's counsel had a right to fees at the expense of the estate after a trustee was appointed and that the intended effect of the deletion of those words—a per se ban on awarding of such fees—promoted the desired uniformity. Indeed, the Petitioning Creditors view the 1994 amendments as a codification of the decision in In re NRG Resources, Inc., 64 B.R. 643 (W.D. La. 1986).

In NRG, the court stated that

> [t]he intent of the Bankruptcy Code seems crystal clear that just as a trustee replaces the debtor-in-possession for the purpose of administering the estate and operating its business, so it is that the trustee's attorney displaces the debtor's attorney in order that the trustee will have counsel and assistance in performing his fiduciary duties. There is no need for the debtor to have assistance performing those duties which are fully assumed by the trustee, and hence any "debtor's attorneys" can serve no beneficial purpose for the estate unless they are characterized as attorneys for the trustee.

NRG, 64 B.R. at 647. Significantly, long before the 1994 amendments clouded the issue, the court added that

> [§ 330 seems] simply to recognize [a debtor's attorney's right to seek interim compensation] where the debtor is continuing in possession. [This] provision[] [does] not support the proposition that the debtor's attorney is allowed interim compensation for services rendered after the appointment of a trustee and employment of trustee's attorneys. A trustee having been appointed, it is his duty to administer the estate and anyone participating in the performance of that duty must meet the requirements of 11 U.S.C. § 327.

Id. at 648.

While NRG certainly is "strong medicine" to the case at bar, it is apparently the only case of note conflicting with the so-called majority rule allowing compensation after the appointment of a trustee. See In re Stroudsburg Dyeing & Finishing Co., 209 B.R. 648, 649 (Bankr. M.D.Pa. 1997)

16

(finding "no case that has subscribed to [NRG Resources'] unwavering proscription against compensating counsel for the out of possession debtor"). Moreover, the Ames court—while acknowledging Congress' desire for greater consistency in § 330 law—made no mention of Congress' desire to impose a per se ban on compensation. Rather, the court viewed the 1994 amendments as implementing a uniform set of standards that those rendering professional services must meet before they are compensable from the bankruptcy estate:

> With the 1994 amendments of section 330, Congress made another move towards greater equity in estate management. It provided that an award for fees might be made for services that were "beneficial at the time at which the service was rendered," § 330(a)(3)(c), and, by inverse construction, "reasonably likely to benefit the debtor's estate." Id. (a)(4)(A)(ii)(I).

Ames, 76 F.3d at 71. At this juncture, a clear determination cannot be made as to whether Congress "intended" to disallow all fees to a debtor's counsel after the appointment of a Chapter 11 trustee.

B.      *Public Policy*

A&K also offers public policy rationales in favor of a broad reading of § 330 and posits that the American Rule of attorney's fees should not be applied to the instant case. Standing in the way of this conclusion is the decision, obviously, in NRG Resources. Even A&K admits that NRG hurts its case; it paraphrases the holding in this manner: "[After the Trustee is appointed], the Trustee's attorney displaces the debtor's attorney and . . . the debtor's attorney can serve no beneficial purpose for the estate unless the attorney is characterized as an attorney for the trustee." Brief of Appellant at 19 (citing NRG, 64 B.R. at 647). Nevertheless, A&K distinguishes NRG as a Chapter 7 case and posits that the majority rule, even in Chapter 7 cases, is that the appointment of a trustee does not invoke a per se ban on awarding compensation to a debtor's attorney for work done after the appointment but instead triggers a more flexible "benefits analysis" approach.

17

A&K suggests that this "benefits analysis," and not a per se ban on compensation, is also appropriate in the Chapter 11 context, because debtors in Chapter 11 have an even greater need of representation after the appointment of a trustee than similarly-situated debtors in other Chapters. In particular, A&K notes that Chapter 11 debtors may need (1) representation at the § 341 meeting, (2) assistance in prosecuting a plan of reorganization under § 1121(c), and (3) assistance in cooperating with a trustee in performance of the trustee's duties. A&K avers that if we uphold the district court's per se ban on awarding fees after the appointment of a trustee, attorneys will be disinclined to represent a debtor's interests after a trustee is appointed. The result, A&K concludes, will be the widespread "under-exercising" of debtors' rights and the underperformance of debtors' Code-mandated duties.

Finally, A&K also claims that while the American Rule of attorney's fees generally prevents fee shifting from party to party (and thus requires each party to bear its own litigation expenses), it does not require attorneys to work for free. According to A&K, the district court's holding unfortunately ensures just that, since Pro-Snax—a bankrupt business—cannot pay A&K's fees. To apply the American Rule to deny compensation in such circumstances, A&K concludes, is nonsensical, and simply works a hardship on attorneys.

The Petitioning Creditors address these concerns by arguing that A&K has not sufficiently made the showing required for a court to interpret a lack of legislative history with respect to a change in a bankruptcy statute as an implied invitation to apply prior practice under the statute to resolve a dispute. In particular, the Petitioning Creditors claim that A&K has failed to show: (1) that the current version of § 330 is in any way ambiguous on the issue of compensating debtor's attorneys; (2) that pre-1994 practice with respect to compensating a debtor's attorney after the appointment of

18

a trustee was clearly established and uniform; and/or (3) that the legislative history of the 1994 amendments indicates a congressional desire that pre-1994 practice with respect to § 330 be "brought forward." In the end, the Petitioning Creditors maintain that current § 330 should be given its "ordinary, contemporary, common meaning;" that current § 330 plainly does not allow compensation to the debtor's attorney after a trustee has been appointed; and that the bankruptcy court's contrary finding—although a "well-intentioned attempt at equity"—was necessarily invalid.

The Petitioning Creditors also claim that A&K's worries with respect to the "under-exercising" of debtors' rights and the underperformance of debtors' duties (*i.e.,* if debtors' attorneys are not paid) are overblown. The Petitioning Creditors aver that 11 U.S.C. § 521 provides the sole duties of a dispossessed debtor, only three of which are applicable to a corporate debtor—(1) filing a list of creditors and certain financial schedules; (2) cooperating with the trustee as necessary; and (3) surrendering to the trustee all property, records, and books of the Debtor. The Petitioning Creditors stress that the filing of a Chapter 11 plan is not one such "duty" (as claimed by A&K and the bankruptcy court), but only a "right." On this basis, the Petitioning Creditors conclude that the $10,000 retainer received by A&K sufficiently covered the value of any assistance it provided in helping Pro-Snax execute its limited statutory duties.

Finally, the Petitioning Creditors posit that interpreting § 330(a)(1) (with its notable lack of the words "or to the debtor's attorney") as a fee-shifting statute in favor of debtors' attorneys has the potential to open a "pandora's box"—*i.e.,* if such an interpretation is premised on the policy view that attorneys should be compensated for assisting debtors in exercising their right to file a plan under 11 U.S.C. § 1121(c). The Petitioning Creditors aver that if such an interpretation carries the day, there is no principled reason why the attorney's fees of creditors, shareholders, or indentured

19

trustees—who likewise may file plans under § 1121(c)—should not also be shifted. The Petitioning Creditors conclude that such widespread fee-shifting to creditors—with nary a specific authorization in the statute—is simply unwarranted in light of the American Rule of attorney's fees.

III.    Analysis

A.    *Section 330 Disallows Compensation to A&K*

We decide the issue before us bound by our conventions of statutory construction, even though common sense might lead the lay observer to conclude that a different result is perhaps more appropriate. The law, and the rules to which we adhere in order to interpret it, does not always conform to the dictates of common sense. In this case, we are faced with a statute which is clear on its face. It excludes attorneys from its catalog of professional officers of a bankruptcy estate who may be compensated for their work after the appointment of a Chapter 11 trustee. Although the legislative history and, indeed, a brief syntactical evaluation of the clause at issue suggest that Congress inadvertently neglected to include attorneys, our canons of construction do not require—nay, do not permit—us to consider these exogenous sources when the statute is clear textually on its face.[14] Consequently, we must affirm the judgment of the district court denying compensation to Appellant.

A&K argues that § 330's statutory language, its legislative history, and the lack of any legislative history purporting to change the attorney-compensation language in the 1994 amendments to § 330 combine to support its belief that it should be compensated from the estate for work

---

[14] While it is certainly true that the omission of the conjunction "or" from the 1994 amendments to § 330 makes for an awkward sentence, this omission does not change the meaning of the words around it. Indeed, all that the omission would signify to a reader unfamiliar with the pre-1994 statute is the typographical deletion of "or" before the phrase "a professional person." It does not, of itself, suggest that the phrase "to the debtor's attorney" is also missing from the statute as enacted.

performed after the appointment of a Chapter 11 trustee. We disagree because we must commence our analysis by examining the plain language of the relevant statute, see Stanford v. Commissioner, 152 F.3d 450, 455 (5th Cir. 1998); G.M. Trading Corp. v. Commissioner, 121 F.3d 977, 981 (5th Cir. 1997), and here our reading of § 330(a) begins and ends our inquiry. As we have said before, "[i]n the absence of any ambiguity, our examination is confined to the words of the statute, which are assumed to carry their ordinary meaning." Stanford, 1998 WL 496488, *5. Recourse to the legislative history is unnecessary in light of the plain meaning of this text. See Darby v. Cisneros, 509 U.S. 137, 147 (1993).

Since this "cardinal canon of statutory construction," Texas Food Indus. Ass'n v. USDA, 81 F.3d 578, 582 (5th Cir. 1996), is the rule of our circuit, we must ask whether the statute as written is ambiguous. As we stressed above, while the grammatical elision leads to an awkward construction, it does not in any way render the statute nonsensical. That being the case, we must "presume that a legislature says in a statute what it means and means in a statute what it says." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992); Texas Food Industries, 81 F.3d at 581-82; United States v. Meeks, 69 F.3d 742, 744 (5th Cir. 1995). Here, by deleting "to the debtor's attorney" from the statute, Congress has clearly indicated that the debtor's attorney may not be compensated from the estate after the appointment of a Chapter 11 trustee.

The absence of legislative history on this point does not, of course, render the statute ambiguous; even if Congress intended to leave the language intact, the statute as it appears in the Code is unambiguous.[15] In another recent decision analyzing the Bankruptcy Code, we held that even

---

[15] Furthermore, nothing in the legislative history that A&K offers to support its interpretation if so "anchored" to the text of the statute that we would be obliged to heed it. United States v. Gonzales, 117 S. Ct. 1032, 1036 (1997) (quoting Shannon v. United States, 512 U.S. 573, 583

where one party's argument finds "express support" in the legislative history to a statute, where that legislative history is "clearly contrary to the statutory language," it is "unpersuasive."[16] Gamble, 143 F.3d at 225. As Justice Scalia has written in interpreting the Bankruptcy Code: "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute," BFP v. Resolution Trust Corp., 511 U.S. 531, 566 (1994) (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989)), and we decline to do so here. Since there is no dispute that the statute as enacted in 1994 does not include the phrase "to the debtor's attorney," there can be no dispute that § 330(a) is dispositive as written as to the compensation due A&K.

B. A&K's Pre-Appointment Services Must Have Resulted in Identifiable, Tangible, and Material Benefit to the Estate

The other task to which this appeal commends us is deciding which standard we must apply to A&K's services rendered before the appointment of the trustee. A&K argues that a reasonableness test is appropriate—whether the services were objectively beneficial toward the completion of the case at the time they were performed. The Petitioning Creditors, by contrast, advocate a more

(1994)).

[16] In Gamble, the Debtor argued that a statutory exception to the nondischargeability of debts (11 U.S.C. § 523(a)(15)) governed all property settlement debts between husband and wife except "those situations where the debtor has agreed to indemnify his former spouse against a marital debt owed to a third party in exchange for lower alimony payments or a more favorable property settlement." Gamble, 143 F.3d at 225. Even though there was legislative history to support the Debtor's proposition that Congress only enacted this statute to protect former spouses from having unfairly reduced amounts of property and/or alimony, we observed that the language of the statute was in direct contravention to this interpretation and thus precluded it. See id.

stringent test—whether A&K's services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate. We determine today that the stricter test is the appropriate measure.

In so holding, we find that the bankruptcy court erred in taking a lenient view of the standard. Although we acknowledge that the bankruptcy court may have "had the best sense of the case" and was "at a particularly good vantage point to determine which, if any, of [A&K's] legal services inured to the benefit of the estate," it is not at all clear that those services represented an identifiable, tangible, and material benefit to the estate. The bankruptcy court found that A&K's services were useful in certain respects—liquidation, business operations, case administration, claims objection, attempted settlement, disclosure statement, and plan prosecution—but we are disinclined to hold that any service performed at any time need only be reasonable to be compensable.

Indeed, the bankruptcy court here found that some portions of the work for which A&K seeks compensation were duplicative of the trustee's, see § 330(a)(4)(A)(I), and reduced the award accordingly. While our ruling may not change the ultimate award to A&K, we believe it important to stress that any work performed by legal counsel on behalf of a debtor must be of material benefit to the estate. See In re Melp, Ltd., 179 B.R. 636 (E.D. Mo. 1995).

The district court's instruction to the bankruptcy court, to consider strongly the debtor's lack of success in obtaining confirmation of the Chapter 11 plan, is consistent with the standards identified by Congress in § 330, which require that—at the time the services are performed—the chances of success must outweigh the costs of pursuing the action. Even though the bankruptcy court found support for the Chapter 11 plan among creditors other than the Petitioning Creditors, and, if the plan had been confirmed, the estate could have been brought to a swifter conclusion than if the case were brought under Chapter 7, we find that A&K should have known from the outset that the Debtor's

23

prosecution of a Chapter 11 plan would fail, given that the Petitioning Creditors—who collectively held more than 50% of the indebtedness in this case—filed an involuntary Chapter 7 case against the Debtor and repeatedly informed the Debtor and the bankruptcy court that they believed the case should be administered under Chapter 7.[17]

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court, reversing and remanding the bankruptcy court's decision.

---

[17] We believe that these facts necessarily should have led A&K to the conclusion that its services were futile, meaning that we would find against A&K even if we today adopted the reasonableness standard that it suggests.