**In re James Hamilton NEEDHAM and Janell Renae Cole Needham, Debtors.**

No. 99–50242.

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Aug. 14, 2001.

Order Denying Reconsideration
Oct. 2, 2001.

D. Patrick Keating, Opelousas, LA, Charles M. Pisano, New Orleans, LA, for Debtors.

Paul N. Debaillon, Lafayette, LA, trustee.

## MEMORANDUM RULING

GERALD H. SCHIFF, Chief Judge.

James Hamilton Needham and Janell Renae Cole Needham ("Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code[1] on February 8, 1999 ("Petition Date"), and on that day an order for relief was duly entered. The Debtors remained in possession of their property and continued to operate their business as no chapter 11 trustee was appointed. The case, however, was converted to chapter 7 on April 18, 2000.

The Debtors have been represented herein by D. Patrick Keating, A Professional Law Corporation ("Keating"). Keating has now filed its **FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTORS** ("Application"). Pursuant to the Application, Keating is seeking an award of attorney fees in the amount of $18,942.00, and reimbursement of expenses in the amount of $1,948.84, for a total award of $20,890.84, subject to a credit for prepetition retainer in the amount of $2,700.00. The United States Trustee ("UST") filed an objection to the Application. A hearing on the Ap-

plication was held on July 3, 2001. Present were D. Patrick Keating, Gail B. McCulloch, counsel for the UST, and Paul N. DeBaillon, the chapter 7 trustee. After hearing from parties in interest, the matter was taken under advisement.

Section 330(a) deals with compensation to professionals and provides in relevant part as follows:

(a) (1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a ... a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the ... attorney ...; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) (A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

---

**1.** Title 11, United States Code. References herein to sections of Title 11 are shown as "section ___."

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4) (A) ..., the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

\* \* \* \* \* \*

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

In *Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (Matter of Pro–Snax Distributors, Inc.),* 157 F.3d 414 (5th Cir.1998), the Fifth Circuit addressed the standard to be applied in awarding fees to debtor's counsel in chapter 11 cases. The court recognized the competing standards of the "reasonableness test" on the one hand ("whether the services were objectively beneficial toward the completion of the case at the time they were performed"), and the more "stringent test whether [counsel]'s services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate." 157 F.3d at 426. The court opined:

We determined today that the stricter test is the appropriate measure.

... The bankruptcy court found that [counsel's] services were useful in certain respects-liquidation, business operations, case administration, claims objection, attempted settlement, disclosure statement and plan prosecution-but we are disinclined to hold that any service performed at any time need only be reasonable to be compensable.

... we believe it important to stress that any work performed by legal counsel on behalf of a debtor *must* be of *material benefit* to the estate. (Citation omitted.) (Emphasis added.)

157 F.3d at 426.

In *Pro–Snax,* the bankruptcy court had awarded counsel fees based upon the more liberal "reasonableness test." The district court reversed, suggesting that the bankruptcy court look closely at a most critical factor, the degree of success. This instruction, the Fifth Circuit noted, "is consistent with the standards identified by Congress in § 330, which require that-at the time the services are performed-the chances of success must outweigh the costs of pursuing the action." *Ibid.* The court then observed: "... we find that [counsel] should have known from the outset that the Debtor's prosecution of a Chapter 11 plan would fail ...." *Ibid.*

There is no question but that the ability of the Debtors to reorganize was at all times dependent upon the ability of a non-debtor entity, NTC Pump and Equipment, Inc. ("NTC"), to continue paying rental to the Debtors on real property owned by the Debtors and leased to NTC. From the beginning of the case, the UST requested of Keating that the Debtors provide the UST with financial information regarding NTC. Ultimately, the court ordered the Debtors to provide all requested financial information regarding NTC that may be requested by the UST.

Throughout the chapter 11 proceeding, the Debtors steadfastly maintained that

100% of the stock of NTC was owned by their daughter and that they had no ownership interest in the corporation whatsoever. Some 14 months after the Petition Date, however, Mr. Keating advised the UST that the Debtors in fact owned 100% of the corporation. This revelation occurred during a phone conversation between Mr. Keating and a representative of the UST on or about April 13, 2000. In fact, the court had approved the Debtors' Disclosure Statement on February 1, 2000, notwithstanding the fact that the Disclosure Statement and the Debtor's Chapter 11 Plan were premised on NTC stock ownership by the daughter rather than the Debtors.

The UST's objection focuses upon the Debtors' untimely response to the UST's request for financial information regarding NTC and the failure to ascertain information regarding the ownership of NTC. As a result, the UST contends that the majority of Keating's efforts during the confirmation process cannot satisfy the *Pro–Snax* criteria, *i.e.*, "whether [counsel]'s services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate." 157 F.3d at 426.

The court agrees with the UST. The court acknowledges that counsel for the Debtors can only do so much in seeking to obtain the cooperation of his clients. Nonetheless, the Debtors' failure to respond to the UST's requests for information and the Debtors' erroneous insistence of lack of ownership in NTC, resulted in significant time being spent by Mr. Keating which in no way can be considered a benefit to the estate. While certain of the ultimate facts were not disclosed to Mr. Keating until certain tax returns were ultimately prepared, the court finds a lack of investigation by Mr. Keating with respect to the issue of NTC stock ownership. A more aggressive stance being taken by

counsel would have resolved that issue months before, thus relieving the court, creditors, the UST, and Mr. Keating of wasting substantial time and effort.

Mr. Keating's time records reflect a total of 157.85 hours. Of this amount, 98.25 hours were categorized as "Plan and Disclosure Statement." Inasmuch as no plan was ever filed which accurately set forth ownership of the NTC stock, the court will not approve fees at the level requested by Mr. Keating. While it is very difficult to estimate the amount of time Mr. Keating would have spent if he had acquired the correct information, the court believes that a fair allowance for "Plan and Disclosure Statement" time would be 20 hours.

Within 15 days of the entry of this Memorandum Ruling, Mr. Keating is to prepare a proposed order in conformity with the foregoing and submit such order to counsel for the UST. Counsel for the UST is to approve the order as to form and submit same to the Clerk of the Bankruptcy Court for processing.

### ORDER DENYING MOTION FOR RECONSIDERATION

On August 14, 2001, this court set forth reasons for allowance of compensation to D. Patrick Keating, A Professional Law Corporation ("Keating"), counsel for the Debtors in this case. A Motion to Reconsider Memorandum Ruling ("Motion") was timely filed. The United States Trustee has filed an Opposition to Motion to Reconsider Memorandum Ruling ("Opposition.")

The court has reviewed the Motion and the Opposition and is convinced that its initial ruling was correct and that the compensation awarded Keating was reasonable.

The premise of the Debtors' efforts at rehabilitation under chapter 11 was that

the stock of the corporation which owned the real property was held by the Debtors' daughter and not by the Debtors. This proved to be incorrect. The Opposition clearly shows that with diligent effort this fact should have been ferreted out early in the case. With the Debtors' 1995 income tax returns indicating corporate income to the Debtors, and knowing that ownership of the stock was a critical issue in the case, a reasonable step would have been to interrogate the accountant regarding ownership of the stock. Once the ownership of the stock in 1995 was determined, counsel should have demanded evidence of the transfer of the stock to the daughter as the Debtors contended. This was not done of course, and the progress of the case was greatly affected.

The court quoted at length from the case of *Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (Matter of Pro–Snax Distributors, Inc.)*, 157 F.3d 414, 426 (5th Cir.1998), which requires a court to investigate "whether [counsel's] services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate." Based upon the problems inherent in this case relating to stock ownership, the court concluded that many of counsel's 98.25 hours attributable to "Plan and Disclosure Statement" matters did not satisfy this requirement. Thus, the court disallowed all but 20 hours of counsel's time with respect to this project. The court concludes that this amount was and is reasonable in light of the circumstances of the case.

■ Lastly, Keating suggests that reducing counsel fees will only result in a windfall for the Debtors. While this may be true, the fact that a debtor's return of surplus funds is enhanced by disallowance of counsel fees is not a proper inquiry for the court. The court is guided by the constraints of 11 U.S.C. § 330(a) and the jurisprudence thereunder. And based

upon those authorities, the court considers its prior determination to be correct. For the foregoing reasons, the Motion is **DENIED.**

The following is the last paragraph of the court's original ruling:

Within 15 days of the entry of this Memorandum Ruling, Mr. Keating is to prepare a proposed order in conformity with the foregoing and submit such order to counsel for the UST. Counsel for the UST is to approve the order as to form and submit same to the Clerk of the Bankruptcy Court for processing.

The proposed order has not yet been received by the court. The court again directs Mr. Keating to prepare the proposed order and submit same to counsel for the UST.

**IT IS SO ORDERED.**