**In re IRH VINTAGE PARK PART-NERS, L.P.; dba Vintage Park Apartment Homes and Vintage Park Investments, LLC and VPI General Partner, LLC, Debtors.**

No. 10–37503.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Sept. 6, 2011.

Edward L Rothberg, Melissa Anne Haselden, T. Josh Judd, Annie E. Catmull, Hoover Slovacek LLP, Houston, TX, for Debtors.

*ORDER DENYING FIRST AND FINAL APPLICATION OF GILBERT A. HERRERA AND HERRERA PARTNERS, EXPERT WITNESS FOR DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICE AND REIMBURSMENT OF EXPENSES*

[Docket No. 258]

JEFF BOHM, Bankruptcy Judge.

## I. INTRODUCTION

On April 29, 2011, Gilbert A. Herrera (Herrera) and Herrera Partners (collectively HP), financial consultants and expert witnesses for IRH Vintage Park Partners, LP, VPI General Partner, LLC, Vintage Park Investments, LLC (collectively Debtors), filed the First and Final Fee Application of Gilbert A. Herrera and Herrera Partners, Expert Witness for Debtors, for Allowance of Compensation for Services and Reimbursement of Expenses for Period of January 7, 2011 through April 11, 2011 (the Fee Applica-

tion). [Docket No. 258]. In the Fee Application, HP seeks payment of fees in the amount of $27,475.00 and reimbursable expenses in the amount of $168.30, for a total sum of $27,643.30. [Docket No. 258, p. 3]. HP received a retainer in the amount of $5,000.00, thereby leaving a balance of $22,643.30 (assuming approval). [Docket No. 258, p. 8].

On May 19, 2011, Capmark Bank (Capmark) filed a response to the Fee Application. [Docket No. 262]. In this response, Capmark objects to the Fee Application on two separate grounds: (1) that payment will come from Capmark's cash collateral; and (2) that Capmark, as a secured creditor, did not realize any benefit of the services HP provided. [Docket No. 262 p. 2–3].

On June 23, 2011, the Court held a hearing on the Fee Application. At this hearing, the Court heard arguments from HP *pro se*, counsel for the Debtors, and counsel for Capmark. Herrera, the sole witness, testified on HP's behalf. At the close of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court concludes that the Fee Application should be denied in its entirety.[1]

## II. PROFESSIONAL FEES, SHOULD THE COURT APPROVE, WOULD BE AN ADMINISTRATIVE EXPENSE RATHER THAN A PAYMENT FROM CASH COLLATERAL.

■ Capmark alleges that any payment of HP's fees would come from Capmark's cash collateral. The Debtors argue that this Court confirmed the Amended Joint Plan of Liquidation of Debtors and Capmark Bank Dated March 31, 2011 (the Plan); and accordingly, the payment of HP's fees, subject to this Court's approval,

---

1. The Court only addresses the first argument made by Capmark regarding cash collateral. The Court does not believe that it needs to address the second argument due to this

Court's discussion herein about the standards set by the Fifth Circuit for a professional to receive compensation.

would be paid as an administrative expense according to the Plan. The Court agrees with the Debtors.

Pursuant to Section 1141,[2] the Plan binds both Capmark and the Debtors to the terms of the Plan. The Plan explicitly provides that "Allowed Administrative Claims and Priority Non–Tax Claims will be paid in cash in full[.]" [Docket No. 246 p. 3]. The Plan defines Administrative Claims to include compensation for services and expenses under § 330.[3] *See* [Docket No. 246 p. 9]. Moreover, when this Court confirmed the Plan, any prohibition on using cash collateral was removed. *See* [Docket No. 63 p. 3]. Therefore, according to the terms of the Plan, if the Court were to approve HP's fees, the fees would be paid as an administrative expense in full. Unfortunately for HP, the Court cannot prove HP's requested fees.

**III. SECTION 330 AND FIFTH CIRCUIT CASE LAW PRECLUDE THIS COURT FROM GRANTING HP'S FEE APPLICATION.**

■ The Court has conducted a review of the Fee Application and concludes that the Court may not compensate the services that HP rendered according to applicable Fifth Circuit case law and the requirements set forth in Section 330(a). HP avers that it conducted analyses, prepared a report, testified at the January 31, 2011 plan confirmation hearing (at which confirmation was denied), and assisted the Debtors' counsel with preparation for the final confirmation hearing on April 1, 2011. HP further avers that these services were beneficial to the estates. The Court has an independent duty to inquire whether HP provided an identifiable, tangible, and material benefit to the estates. *In re Johnson,* 234 B.R. 671, 674 (Bankr. S.D.Tex.1999). The Court concludes that HP did not.

Pursuant to 11 U.S.C. § 330(a), a professional employed by a debtor-in-possession may be awarded: (a) reasonable compensation for actual, necessary services performed by the professional; and (b) reimbursement for actual, necessary expenses.[4] Section 330(a)(3) states that "[i]n

---

2. Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code. References to a "Rule" or "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure.

3. Article 2, Paragraph 2.1.1 defines Administrative Claim as follows:

   Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtors' estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all

fees and charges assessed against the estates of the Debtors under title 28 of the United States Code.
   [Docket No. 246 p. 4].

4. Section 330(a)(1) expressly states that "the court may award to ... a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services rendered by the ... professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." Section 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Pursuant to Section 1107(a), "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." In

determining the amount of reasonable compensation to be awarded to ... [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors...."[5] The statute further precludes courts from awarding compensation for "unnecessary duplication of services; or services that were not—reasonably likely to benefit the debtor's estate; or necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

According to *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, any services provided by professionals must result in an identifiable, tangible, and material benefit to the bankruptcy estate in order to be compensable. 157 F.3d 414, 426 (5th Cir. 1998). This Court, in addition to other bankruptcy courts across Texas, considers both prospective and retrospective viewpoints when applying *Pro-Snax* in conjunction with Section 330. *See, e.g., In re Cyrus II P'ship*, No. 05–39857, 2009 Bankr.LEXIS 2587, 2009 WL 2855725, at *5 (Bankr.S.D.Tex. Sept. 1, 2009); *In re Energy Partners, Ltd.*, 409 B.R. 211, 228–30 (Bankr.S.D.Tex.2009); *In re Am. Hous. Found.*, No. 09–20232, 2010 Bankr.LEXIS 2710, 2010 WL 3211691, at *2 (Bankr. N.D.Tex. Aug. 11, 2010); *In re Spillman Dev. Grp., Ltd.*, 376 B.R. 543, 550–54 (Bankr.W.D.Tex.2007). Prospectively, the Court requires that the professional ser-

vices "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case" in accordance with Section 330(a)(3)(C). *Cyrus II P'ship*, 2009 Bankr.LEXIS 2587, 2009 WL 2855725, at *5. Then, the Court retrospectively evaluates whether the services resulted in an identifiable, tangible, and material benefit to the estate—recognizing that a service may benefit the estate without resulting in a quantifiable or monetary return. *Id.* (citing *In re JNS Aviation, LLC*, No. 04–21055, 2009 Bankr.LEXIS 8, 2009 WL 80202, at *8 (Bankr.N.D.Tex. Jan. 9, 2009)) ("The Court does not construe the benefits analysis to require that each expenditure of time result in a quantifiable benefit to the estate.").

Looking first to the prospective analysis, HP's services probably were necessary to the administration of the Debtors' case. The plain language of Section 330 sets forth several factors as guidance to evaluate whether services were necessary or beneficial. The Fee Application contains exhibits that comply with the requirements of *In re First Colonial Corp.*, insofar as the exhibits recite the number of hours worked and contain a description of how HP spent each of those hours. 544 F.2d 1291, 1299 (5th Cir.1977). HP's exhibits reflect, and Herrera argued, that HP has provided expert testimony and

accordance with these provisions, the Debtor, acting as debtor-in-possession, filed an application seeking to employ HP on January 7, 2011. [Docket No. 146]. The Court entered an order granting the Debtor's application on March 11, 2011. [Docket No. 233].

5. Such relevant factors include those enumerated in Section 330(a)(3): "(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case

under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

litigation support in several bankruptcy cases, demonstrating skill and experience. Finally, HP did in fact testify as the Debtors' expert witness at the January 31 confirmation hearing, demonstrating, as Debtors and Debtors' counsel believed, that the testimony and analyses were necessary to the administration of the Debtors' case. Therefore, the Court concludes that HP's services were probably necessary to the administration of the Debtors' case at the time that HP rendered the services.

Turning to the retroactive analysis, the Court concludes that the services did **not** result in an identifiable, tangible, and material benefit to the estates. The plan for which HP testified was **not** confirmed. HP's testimony was neither mentioned in this Court's oral findings, nor relied upon for the Court's ruling. Moreover, at the hearing on the Fee Application, there was no evidence presented showing that HP's services rendered a benefit, financial or otherwise, to the estates. Accordingly, the Court concludes that HP did not provide an identifiable, tangible, or material benefit to the estates.

For this Court to approve the Fee Application, HP must pass both tests. Though the Fee Application may pass the prospective analysis, it certainly fails the retroactive analysis. Accordingly, the Fee Application should be denied.

### IV. CONCLUSION

In sum, the Court concludes that the services and expenses for which HP seeks compensation did not provide an identifiable, tangible, or material benefit to the Debtors' estates. Because the Fifth Circuit requires the services of any professional to provide an identifiable, tangible, and material benefit to the estate, the Fee Application should be denied in its entirety. It is therefore

ORDERED that the Fee Application is denied in its entirety; and it is further

ORDERED that HP shall return the retainer of $5,000.00 to the Debtors no later than September 20, 2011, with the funds to be delivered by check to counsel of record for the Debtors, Edward L. Rothberg; and it is further

ORDERED that Mr. Rothberg shall provide a copy of this Order to HP within 48 hours after entry of the Order on the docket; and it is further

ORDERED that Mr. Rothberg shall file a certificate no later than 5:00 p.m. on September 21, 2011, setting forth whether or not HP has returned the $5,000 retainer.