IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-11012

_____

In The Matter Of: TEXAS SECURITIES, INC.,

                                        Debtor

-------------------------------------------------------------------

M. BRUCE PEELE,

                                        Appellant,

                          versus

JAMES CUNNINGHAM,

                                        Appellee.


_____

Appeal from the United States District Court
For the Northern District of Texas

_____

July 7, 2000

Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

M. Bruce Peele seeks review of the bankruptcy court's ruling on his final application for fees.  Because we find that the ruling was inconsistent with 11 U.S.C. § 328(a), we REVERSE and REMAND for the recalculation of Peele's fees.

Hill, Held, Metzger, Lofgren & Peele, P.C., ("Hill & Held") was employed as special litigation counsel to represent the trustee for Texas Securities, Inc.  The original Employment Order, dated

April 6, 1994, provided that the law firm was to be employed on a contingent fee basis, giving it a 40% fee for assets recovered for the debtor Texas Securities. Peele is the successor to the law firm. The original Employment Order did not specify whether the fee provision was governed by 11 U.S.C. § 328 or 11 U.S.C. § 330.

On October 20, 1995, the bankruptcy court entered an order modifying the original order that approved Hill & Held's employment. The modifying Order provides that the Hill & Held firm

> shall, consistently with the applicable provisions of the Bankruptcy Code, including but not limited to Sections 327 and 328, submit all interim and final fee applications on the following basis: (i) all work completed prior to September 8, 1995, shall be submitted in accordance with the April 6, 1994 Order authorizing employment of Hill & Held on a contingency fee basis; (ii) as to all work pending as of September 8, 1995, the fees associated with said work shall be calculated using a blended formula which Hill & Held contends represents reasonable compensation based upon the April 6th contingency fee arrangement for work performed prior to September 8th and the hourly fee arrangement for work performed after September 8th; and (iii) as to all new work commenced after September 8th, Hill & Held shall submit its fee applications based upon hourly rates in effect as of September 8, 1995.

The Order further states that it "does not modify, in any respect, this Court's authority to review this and all employment orders in accordance with Section 328 of the Bankruptcy Code." The only Bankruptcy Code sections referenced in the Order are §§ 327 and 328.

When Peele submitted his final fee request, the bankruptcy court reduced the amount from that requested by $ 40,102.32. The bankruptcy court's order on final applications for fees, dated March 24, 1999, states that it analyzed the fee requests in

2

accordance with the "lodestar" formula provided for by 11 U.S.C. § 330(a)(1). Peele requested contingent fees of $591,234 and hourly fees of $69,503. He billed the hourly fees at a rate of $201.19 per hour. The bankruptcy court approved payment of $620,634.68, without distinguishing between contingent and hourly fees and without explaining the reason for the reduction from the amount Peele requested.

Peele appealed the order on final applications for fees to the district court, arguing that the bankruptcy court erred in reviewing his fee application under 11 U.S.C. § 330 rather than § 328. The district court affirmed the bankruptcy court's ruling, and Peele appealed that order to this court.

The bankruptcy court's conclusions of law are reviewed *de novo*. *See In the Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414, 421 (5th Cir. 1998).

Peele argues that the hourly rate for work performed after September 8, 1995 is not subject to the lodestar formula of § 330(a). Section 328(a) provides for retainer, hourly or contingent fee compensation, and Peele contends that the modifying Order established that he would be compensated in part on a contingent fee basis and in part on an hourly fee basis. Consequently, the bankruptcy court could not shift his compensation to the lodestar

formula of § 330.  We agree.[1]  The modifying Order establishes a combination of contingent fee and hourly fee compensation pursuant to § 328(a).

We have interpreted § 328 to limit the power of the bankruptcy court to alter the compensation of professionals: "[t]he court must therefore set the compensation award either according to § 328 or § 330.  If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally approved."  *In the Matter of National Gypsum Co. v. Donaldson Lufkin & Jenrette Securities Corp.*, 123 F.3d 861, 862-63 (5th Cir. 1997); *see also United States v. Ruff*, 99 F.3d 1559, 1567 (5th Cir. 1996)(holding that commission of business broker was fixed under § 328 where agreement was approved by court and underlying service had been completed).  Section 328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330 applies when the court does not do so.  *See Unsecured Creditors' Comm. v. Puget Sound Plywood*, 924 F.2d 955, 960 (9th Cir. 1991).  Once the

---

[1]The dissent of our able colleague emphasizes the court's stated intention in the introductory paragraph of the Order to adopt Hill & Held's recommendation that included a "lodestar approach" for future work.  The court's Order, however, specified an hourly rate in providing that "as to all new work commenced after September 8th, Hill & Held shall submit its fee applications based upon hourly rates in effect as of September 8, 1995."  The suggestion of counsel notwithstanding, the bankruptcy court ordered the specific hourly rate in effect as of September 8, 1995, and the court specified that the Order was entered under § 328.

bankruptcy court has approved a rate or means of payment, such as a contingent fee, the court cannot on the submission of the final fee application instead approve a "reasonable" fee under § 330(a), unless the bankruptcy court finds that the original arrangement was improvident due to unanticipated circumstances as required by § 328(a). *See National Gypsum*, 123 F.3d at 862; *In re Reimers*, 972 F.2d 1127, 1128 (9th Cir. 1992).

In this case, the court approved a contingent fee arrangement in the original Employment Order and in the modifying Order of October 20, 1995 approved the contingent fee basis for work performed prior to September 8, 1995 and an hourly rate for work performed thereafter. The modifying Order establishes a mode of compensation governed by § 328, and the bankruptcy court could not alter that compensation on Peele's submission of the final fee application without making a finding that the modifying Order was improvident due to unanticipated circumstances. Since the bankruptcy court made no such finding, the court could not shift any part of Peele's compensation to the lodestar formula of § 330(a)(1).

We REVERSE and REMAND with instructions that the bankruptcy court redetermine Peele's fees in accordance with § 328 rather than the lodestar formula of § 330(a)(1). On remand, the court should apply the contingent fee at the rate originally agreed to, the blended rate described in the modifying Order, and the hourly rate

specified in the modifying Order, which is that in effect at Hill & Held on September 8, 1995.

REVERSED and REMANDED.

6

REYNALDO G. GARZA, Circuit Judge, dissenting:

The majority reverses the district and bankruptcy courts and remands with instructions that the bankruptcy court redetermine Peele's fees in accordance with § 328 rather than § 330. The majority found that the district court should apply the contingent fee at the rate originally agreed to, the blended rate described in the modifying order, and the hourly rate specified in the modifying Order. I must respectfully dissent, however, because the bankruptcy court in the present case did not approve a specific rate to be used in calculating fees based on the blended or hourly method of compensation. Rather, the bankruptcy court's Modified Employment Order differentiated between types of compensation based upon the date that services were performed for the bankruptcy estate. Under the Modified Employment Order, pre-September 8 matters would be paid on a contingency fee basis, post-September 8 matters would be paid on an hourly fee basis, and matters pending as of September 8 would be paid on either a contingent or hourly fee basis.

The first method of compensation consisted of a 40% contingent basis for services completed prior to September 8, 1995. The parties would be able to calculate with certainty the amount that Peele would be compensated based on the contingent fee arrangement, and the bankruptcy court agreed to it. However, the bankruptcy court and Peele did not agree on the rate to be used after

September 8, 1995, and no such rate was included in the Order. The Modified Employment Order does not provide a definitive hourly rate or even a range of hourly rates.[2]  Under § 328, the bankruptcy court may approve a professional's employment based on any "reasonable terms and conditions of employment." 11 U.S.C. § 328. Because the Modified Employment Order did not establish a post-September 8 hourly rate of compensation, the bankruptcy could not possibly have made a prior determination of the reasonableness of the "terms and conditions of employment" or given prior approval to the compensation requested by Peele. Thus, the bankruptcy court and Peele did not agree that § 328 would apply to the entire final fee application.

The Modified Employment Order states that the employment agreement was being modified "to (i) affirm the contingency fee arrangement with regard to completed work; (ii) pay for work-in-progress on a contingency/hourly fee basis, plus expenses; and (iii) pay for future work performed on behalf of the estate utilizing the *lodestar approach*, plus expenses." (emphasis added).

---

[2]  The majority concludes that the hourly rate is specified in the Modified Employment Order as that "in effect *at Hill & Held* on September 8, 1995." (emphasis added)  However, the Modified Employment Order merely sets the hourly rate as that "in effect as of September 8, 1995."  It is unclear to which specific rate the Modified Employment Order refers.  The majority assumes that the rate to which the Modified Employment Order refers is that in effect *at Hill & Held*, but it does not explain why.  The Modified Employment Order gives no indication that the rate in effect at Hill & Held on September 8 had been mutually agreed upon or given prior court approval.

The lodestar approach refers to a formula involving the multiplication of the number of hours reasonably expended in a case by the hourly compensation rate prevailing in the community for similar work. The resulting figure is then subject to adjustment to reflect factors such as the difficulty and quality of the representation. In accordance with the lodestar approach, Peele's final fee application included an analysis of the factors to be considered in adjusting the lodestar. If the bankruptcy court was without authority to reduce Peele's fees, except for developments unforeseen when the fees were approved, there would be no need to mention the lodestar approach in the modified order or to address the factors in the fee application.

The Modified Employment Order states that it did "not modify in any respect, this Court's authority to review this and all employment orders in accordance with Section 328 of the Bankruptcy Code." Peele argues that this language establishes that the entire agreement is governed by § 328. However, the bankruptcy court's reservation of its authority to review the terms and conditions of employment orders pursuant to § 328 does not necessarily imply that the entire Order is actually controlled by § 328. Reserving authority is not the same as exercising it. The Modified Employment Order did not set a specific post-September 8 compensation rate, rendering § 328 inapplicable to the review of post-September 8 compensation.

The only part of the agreement that § 328 governs is the 40% contingent fee agreement because the court expressly approved and established that amount in both the Original and Modified Employment Orders. This arrangement enabled the bankruptcy court to grant its prior approval because the court could evaluate the reasonableness of the specified amount in advance. In contrast, the bankruptcy court was not able to grant its prior approval to the post-September 8 compensation because no rate on which the blended fees and hourly fees would be based had been determined or disclosed, and thus an analysis of the reasonableness of such an arrangement could not be made in advance.

In accordance with congressional intent, the bankruptcy and district courts correctly decided to apply the reasonableness standard of § 330 to the present case. If a district court fails to clearly determine the hourly rate of compensation, then § 328 is inapplicable, and § 330 governs by default. As this Court explained in *Donaldson Lufkin & Jenrette Securities Corporation v. National Gypsum Company*, professionals may avoid § 330 and the "uncertainties of what a judge thought the work was worth after it had been done" by proceeding under § 328. *Id.* at 862-3. However, § 328 applies only where prior agreement on a rate of compensation has eliminated uncertainty and courts need not engage in judicial guesswork to determine the rate. As in the present case, where ambiguity exists as to whether court approval has been given to a

specific, mutually agreed-upon hourly rate of compensation, Congress intended § 330 to govern. *See National Gypsum*, 123 F.3d 861 (5th Cir. 1997) (holding that bankruptcy courts must set compensation awards for professional consultants either according to § 330, which governs compensation of officers based on reasonableness, or § 328, which permits professionals to obtain prior court approval of certain compensation agreed to with the trustee, debtor, or committee) (citing 11 U.S.C. §§ 328, 330).

In conclusion, I part company with the majority because of a combination of factors. First, the majority relies on ambiguous language in the Modified Employment Order that fails to clearly disclose the hourly rate of compensation. *See supra* footnote 1. Second, the majority overlooks the discussions of the lodestar approach in the Modified Employment Order and the final fee application. Third, it is uncertain whether the parties agreed that § 328 would apply to the entire Modified Employment Order. Thus, I find that the bankruptcy and district courts were correct in deciding that § 330 must control the post-September 8, blended and hourly rate employment compensation arrangements, while § 328 governs the pre-September 8, 40% contingency fee employment compensation arrangement. Therefore, I respectfully dissent.