**In re MSB ENERGY INC., Debtor.**

**No. 09–36638.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 17, 2011.

Dulcie Green Wink, The Wink Law Firm, PLLC, Katy, TX, Frank J. Wright, Paul B. Geilich, Thomas P. Bingman, III, Wright Ginsberg Brusilow P.C., Dallas, TX, for Debtor.

*MEMORANDUM ORDER GRANTING FIRST AND FINAL APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES BY WRIGHT GINSBERG BRUSILOW P.C. FOR THE PERIOD OF AUGUST 1, 2009 THROUGH OCTOBER 31, 2010* [Docket No. 1076]

JEFF BOHM, Bankruptcy Judge.

On November 15, 2010, Wright Ginsberg Brusilow P.C. (WGB), counsel of record for MSB Energy Inc. (the Debtor), filed its First and Final Application for Allowance of Fees and Reimbursement of Expenses for the Period of August 1, 2009 through October 31, 2010 (the Fee Application). [Docket No. 1076]. In the Fee Application, WGB seeks payment of fees in the amount of $1,157,702.50 and reimbursable expenses in the amount of $85,837.53, for a total sum of $1,243,540.03. [Docket No. 1076, p. 3]. WGB has received payments from the Debtor totaling $645,181.18, leaving an unpaid balance of $598,358.85. [Docket No. 1076, p. 30–31]. On December 6, 2010, XP Energy Partners LP LLP and Leo "Chip" Hanly (the Objecting Creditors) filed their Objection to the Fee Application. [Docket No. 1078]. The Objecting Creditors request that the Court either require additional information regarding the Debtor's assets and liabilities or defer ruling on the Fee Application

until it is known exactly how much creditors in this case will be paid. [Docket No. 1078, p. 4, ¶ 7].

On December 21, 2010, the Court held a hearing on the Fee Application. Upon agreement of all counsel present at the hearing, counsel for the Debtor spoke on its behalf regarding the status of the properties being sold to effectuate the Fourth Amended Plan of Reorganization (the Plan) [Docket No. 1050]. In light of the Court agreeing to extend the time period to sell assets and distribute proceeds under the Plan, the Court continued the hearing on the Fee Application until February 16, 2011.[1] The Court later rescheduled the February 16 hearing for March 25, 2011.

At the March 25 hearing on the Fee Application, the Court heard arguments from counsel for the Debtor and counsel for the Objecting Creditors. Two witnesses testified at the hearing: Paul B. Geilich (Geilich), counsel for the Debtor and a partner at WGB, and David D. Knepper (Knepper), the manager of the Debtor.[2] At the stipulation of both parties, the Court admitted all of the exhibits into evidence—namely, the Debtor's Exhibits 1–29 and the Objecting Creditors' Exhibits 1–23. At the close of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court now concludes that the Fee Application should be granted in its entirety.

■ Pursuant to 11 U.S.C. § 330(a),[3] a professional employed by a debtor-in-possession may be awarded: (a) reasonable compensation for actual and necessary services performed by the professional; and (b) reimbursement for actual, necessary expenses.[4] The fees and expenses awarded pursuant to Section 330(a) may be accorded first priority distribution under

1. Specifically, the Court orally granted the Debtor's Motion to Extend Time to Sell Assets and Distribute Proceeds [Docket No. 1082]. The Court instructed counsel for the Debtor to file a proposed order within one week, which he did on December 22, 2010 [Docket No. 1096]. The Court entered its Order Granting Debtor's Motion to Extend Time to Sell Assets and Distribute Proceeds on December 29, 2010. [Docket No. 1100].

2. Geilich presented his own factual testimony in narrative form and proffered Knepper's testimony. Knepper supplemented his proffered testimony, and counsel for the Objecting Creditors briefly cross-examined him.

3. Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code. References to a "Rule" or "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure.

4. Section 330(a)(1) expressly states that "the court may award to ... a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services rendered by the ... professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." Section 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Pursuant to Section 1107(a), "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." In accordance with these provisions, the Debtor, acting as debtor-in-possession, filed an application seeking to employ WGB on August 5, 2009. [Docket No. 97]. The judge presiding over this case at that time entered an order granting the Debtor's application on August 11, 2009. [Docket No. 117]. The order states that "the firm of Wright Ginsberg Brusilow P.C. does not hold or represent an interest adverse to the estate of the Debtor–in–Possession and is disinterested." [Docket No. 117, p. 1]. Therefore, WGB is a professional person that may be awarded fees and expenses pursuant to Section 330(a).

Section 507.[5] Section 330(a)(3) states that "[i]n determining the amount of reasonable compensation to be awarded to ... [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors...."[6] The statute further precludes courts from awarding compensation for "unnecessary duplication of services; or services that were not-reasonably likely to benefit the debtor's estate; or necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

■■■■ In accordance with Fifth Circuit case law, bankruptcy courts employ the lodestar method to calculate reasonable fees under Section 330(a). *Cahill, Walker & Patterson, P.C. (In re Cahill)*, 428 F.3d 536, 539–40 (5th Cir.2005) (citing *Transamerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)*, 12 F.3d 480,

487 (5th Cir.1994)). The lodestar is computed by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Cahill*, 428 F.3d at 540. The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case, looking specifically to the *Johnson* factors not subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.[7] *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Fender*, 12 F.3d at 487.

WGB attached fee statements to the Fee Application detailing the dates of service, the professional providing the service, a comprehensive description of the services provided, the hours billed, rate charged,

**5.** Section 507(a) sets forth that "[t]he following expenses and claims have priority in the following order ... (2) Second, administrative expenses allowed under section 503(b) of this title...." Section 503(b) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses ... including—(2) compensation and reimbursement awarded under section 330(a) of this title." Thus, any fees and expenses awarded to WGB pursuant to Section 330(a) are allowed administrative expenses under Section 503(b), and they are afforded priority status under Section 507(a). Even though administrative expenses are listed second under 507(a) (*i.e.*, as 507(a)(2)), they would be afforded first priority because the types of expenses and claims listed under 507(a)(1)—which are related to domestic support obligations—do not exist in this case.

**6.** Such relevant factors include those enumerated in Section 330(a)(3): "(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, im-

portance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

**7.** The *Johnson* factors include the following: (1) time and labor required; (2) novelty and difficulty of the legal questions; (3) skill required to properly perform the legal services; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the amount involved and results obtained; (9) experience, reputation, and ability of attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

and total amount sought for each billing entry. [Docket Nos. 1076–2, 1076–3, 1076–4, 1076–5 & 1076–6; Debtor's Ex. No. 1]. The fee statements also itemize WGB's expenses for each month of service with lists including: (a) the date the expense was incurred; (b) a description of the expense; (c) the quantity purchased and rate per item (if applicable); and (d) the total amount of reimbursement sought for each expense. [Docket Nos. 1076–2, 1076–3, 1076–4, 1076–5 & 1076–6; Debtor's Ex. No. 1]. WGB presented a summary of: (a) the fees charged and hours worked for each attorney from the firm who billed the Debtor for services related to this case; (b) the fees and expenses sought for each matter related to the firm's representation of the Debtor; and (c) the various types of expenses for which the firm seeks reimbursement and the total amount sought for each type of expense. [Docket No. 1076–1; Debtor's Ex. No. 1].

Furthermore, WGB provided an overview of the firm's extensive involvement in this case, the nature of the compensation provided for its representation of the Debtor, and the firm's compliance with the legal standards detailed above in computing the amount requested in the Fee Application. [Docket No. 1076; Debtor's Ex. No. 1]. This discussion includes an overview of how the *Johnson* factors weigh in favor of this Court awarding the full amount of fees and expenses requested in the Fee Application. [Docket No. 1076, p. 19–25; Debtor's Ex. No. 1]. Geilich and Knepper's testimony at the March 25 hearing, in conjunction with the Debtor's exhibits admitted into evidence, substantiate the information presented in the Fee Application and attached documentation.

■ The Court has conducted an independent review of the Fee Application and concludes that the total amount requested comports with applicable Fifth Circuit case law and the requirements set forth in Section 330(a). The fees and expenses sought are actual and necessary, and the amount of fees requested encompasses a reasonable number of hours expended at a reasonable hourly rate. Moreover, the Court finds no cause to adjust the amount of fees requested based on any of the *Johnson* factors or the related factors discussed in Section 330(a)(3). Indeed, counsel for the Objecting Creditors represented to the Court at the March 25 hearing that his clients do not dispute the amount of fees and expenses requested. Instead, they assert WGB is not entitled to the full amount sought in the Fee Application because the firm failed to provide an identifiable, tangible, and material benefit to the estate in accordance with *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro–Snax Distribs., Inc.)*, 157 F.3d 414 (5th Cir. 1998). [Tape Recording, 3/25/2011 Hearing at 5:40:30 p.m.–5:40:56 p.m.; 6:20:17 p.m.–6:20:48 p.m.].[8]

■ *Pro–Snax* teaches that any services provided by debtor's counsel must result in an identifiable, tangible, and material benefit to the bankruptcy estate in order to be compensable. 157 F.3d at 426. This Court, in addition to other bankruptcy courts across Texas, considers both prospective and retrospective viewpoints when applying Pro–Snax in conjunction with Section 330. *See, e.g., In re Cyrus II P'ship*, No. 05–39857, 2009 WL 2855725, at *5 (Bankr.S.D.Tex. Sept. 1, 2009); *In re Energy Partners, Ltd.*, 409 B.R. 211, 228–

---

**8.** Counsel for the Objecting Creditors expressly stated: "I am not up here to really talk about the *Johnson* factors much. Mr. Geilich is a fine lawyer. He did a good job. We're here in an unfortunate situation which is called for by *Pro–Snax* where we have to evaluate what we are going to do in a difficult situation. . . . The applicant has the burden of proof, of course, of showing the tangible, identifiable, and material benefit." [Tape Recording, 3/25/2011 Hearing at 6:20:17 p.m.–6:20:48 p.m.].

30 (Bankr.S.D.Tex.2009); *In re Am. Hous. Found.*, No. 09–20232, 2010 WL 3211691, at *2 (Bankr.N.D.Tex. Aug. 11, 2010); *In re Spillman Dev. Grp., Ltd.*, 376 B.R. 543, 550–54 (Bankr.W.D.Tex.2007). Prospectively, the Court requires that the attorneys' services "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case" in accordance with Section 330(a)(3)(C). *Cyrus II P'ship*, 2009 WL 2855725, at *5. Then, the Court retrospectively evaluates whether the services resulted in an identifiable, tangible, and material benefit to the estate-recognizing, of course, that a service may benefit the estate without resulting in a quantifiable or monetary return. *Id.* (citing *In re JNS Aviation, LLC*, No. 04–21055, 2009 WL 80202, at *8 (Bankr.N.D.Tex. Jan. 9, 2009)) ("The Court does not construe the benefits analysis to require that each expenditure of time result in a quantifiable benefit to the estate.").

In affirming the district court's denial of the fees and expenses requested by the debtor's counsel in *Pro–Snax*, the Fifth Circuit emphasized that the debtor was unable to obtain confirmation of a plan of reorganization. 157 F.3d at 426.[9] In the case at bar, however, WGB assisted the Debtor in obtaining confirmation of the Plan and liquidating the Debtor's assets. While the Court acknowledges that the Debtor did not achieve 100% payment to all creditors as originally contemplated in prior versions of the Plan, the circumstances of this case did not place WGB in a position where it should have known from

the outset that the proposed payout would not be achieved. Knepper testified that the following factors resulted in a reduction of the amount of cash available for distribution to unsecured creditors: (a) the emergence of a previously undiscovered lien held by Bank of Oklahoma which resulted in surrender of the bank's interest in accordance with the terms of the Plan; (b) historic lows in natural gas prices which did not rise during the Plan term as anticipated; (c) the Debtor's inability to sell properties for at least the minimum bids provided by the oil and gas clearing house that researched the transactions and conducted the unsuccessful auction; and (d) on-going, costly, and often unnecessary litigation resulting from unreasonable positions taken by opposing creditors in this case. [Tape Recording, 3/25/2011 Hearing at 5:58:20 p.m.–6:03:00 p.m.].

The Objecting Creditors assert that not all of WGB's services resulted in an identifiable, tangible, and material benefit to the estate because the unsecured creditors are not guaranteed a payout in this case. In their supplemental brief, the Objecting Creditors cite two opinions issued by the undersigned judge in support of their position. [Docket No. 1120, p. 10–12] (citing *In re Energy Partners, Ltd.*, 409 B.R. 211 (Bankr.S.D.Tex.2009); *In re McCombs*, 436 B.R. 421 (Bankr.S.D.Tex.2010)). Neither of these case, however, address the circumstances present in the case at bar. In *Energy Partners*, this Court denied the committees' applications to employ two separate investment banks under Section

---

**9.** "The district court's instruction to the bankruptcy court, to consider strongly the debtor's lack of success in obtaining confirmation of the Chapter 11 plan, is consistent with the standards identified by Congress in § 330, which require that—at the time the services are performed—the chances of success must outweigh the costs of pursuing the action.... A & K should have known from the outset that the Debtor's prosecution of a Chapter 11 plan would fail, given that the Petitioning Creditors—who collectively held more than 50% of the indebtedness in this case—filed an involuntary *Chapter 7* case against the Debtor and repeatedly informed the Debtor and the bankruptcy court that they believed the case should be administered under Chapter 7." *Id.*

328 as their financial consultants and financial advisors. 409 B.R. at 223–39. Following its explanation of *Pro–Snax*, the Court determined that "[t]he record is insufficient to establish how the services to be rendered by [the professionals] will provide a tangible, identifiable, and material benefit to the estate." *Id.* at 230.

The Court's discussion regarding potential distribution to creditors, which the Objecting Creditors quoted in their brief, appears in the introduction of the opinion: "The result obtained is a major factor in awarding professional fees. The main goal of Chapter 11 apart from a successful reorganization of a debtor is a maximum distribution to the creditors of the estate." *Id.* at 215. This statement does nothing more than reiterate that one of the primary goals of bankruptcy is repaying creditors of the estate—a purpose which requires courts to police excessive and unwarranted expenditures such as the committees' request in *Energy Partners* "to hire the most expensive investment bankers at virtually nondisgorgable and astronomically high fees." *Id.* This Court did not discuss whether failure to secure distribution to unsecured creditors necessarily means that debtor's counsel did not provide an identifiable, tangible, and material benefit to the estate.

Likewise, this Court's opinion in *McCombs* is not instructive to the Objecting Creditors' argument. *McCombs* involved an evaluation of the Chapter 7 trustee's compensation, in the form of a commission, for his distribution of proceeds from the sale of fully encumbered property. 436 B.R. at 426–27. While this Court held that the trustee was entitled to compensation pursuant to Sections 330 and 326, it awarded less than the statuto-

ry maximum allowed under Section 326. *Id.* at 434–46. This decrease was due, in part, to the fact that the property was fully encumbered and, thus, certain secured claims and all unsecured claims remain unsatisfied. *Id.* at 446.[10] This Court expressly stated that it "does not believe that *Pro–Snax* applies to the case at bar, given that the Trustee is seeking commission based on disbursement of proceeds rather than compensation for his services as an attorney in this case." *Id.* at 444 n. 28. In an alternative ruling, however, this Court determined that—despite decreasing the total amount of commission awarded—the trustee provided "an identifiable, tangible, and material benefit in distributing proceeds to undisputed lienholders and holding proceeds for distribution to either H.D.S. [the secured creditor] or unsecured creditors of the estate." *Id.*

The Objecting Creditors also reference a bankruptcy case out of the Western District of Texas, noting that "where there was no distribution to unsecureds, the [c]ourt cut the fees requested 75%." [Docket No. 1120, p. 13, ¶ 18] (citing *In re Weaver*, 336 B.R. 115, 125 (Bankr. W.D.Tex.2005)). According to the language set forth in the opinion, however, this reduction resulted from factors other than the lack of payment to unsecured creditors. *Weaver*, 336 B.R. at 125. The Court found that the attorney spent an unreasonable amount of time disposing of a certain asset of the estate in light of its tenuous relationship to the bankruptcy case and the limited results obtained. *Id.* Even though the unsecured creditors did not receive any payment from the disposition of this asset, the court nevertheless determined that counsel's services resulted

---

10. The distribution remains contingent on whether the Fifth Circuit upholds this Court's determination that a secured creditor's lien on the debtor's homestead property is valid and enforceable. If this Court's ruling is affirmed, all the funds being held in the Court's registry will be released to this secured creditor. *Id.* at 426–27.

in an identifiable, tangible, and material benefit to the estate. *Id.*[11]

 In the case at bar, this Court is evaluating all of the services provided by WGB, not just services related to the disposition of certain assets of the estate. The Court is not awarding a commission for the disbursement of proceeds under Section 326, but rather is determining whether the Debtor's counsel is entitled to the full amount of fees and expenses it seeks pursuant to Section 330. Further, the Court has already determined, and the Objecting Creditors agree, that the fees and expenses requested are not unreasonable. The Court acknowledges that the Objecting Creditors, as Class 5 unsecured creditors, are not guaranteed payment under the Plan. Indeed, given the most recent financial reports issued by the Debtor, the Objecting Creditors are not likely to receive any payment on their Class 5 claims. However, as stated in both *McCombs* and *Weaver,* a professional's services may still result in an identifiable, tangible, and material benefit to the estate even though unsecured creditors are not paid.

Here, as noted in the Debtor's most recent status report on claims: (a) Class 2 secured claims have been satisfied in full through the return of the secured creditor's collateral; (b) Class 3 lien claims have been fully satisfied; (c) Class 4 secured tax claims have been satisfied; and (d) the undisputed or approved administrative and priority tax claims have been satisfied, including a distribution to the Objecting Creditors. [Docket No. 1108, p. 9; Debtor's Ex. No. 21]. The Objecting Creditors' requested relief essentially seeks to circumvent the established rules of priority distribution by ordering the Debtor to pay Class 5 unsecured claims in full before calculating a pro-rata distribution to the remaining administrative claimants. [Docket No. 1120, p. 13–14, ¶ 19]. While the Court understands the Objecting Creditors' argument and is sympathetic to the fact that unsecured creditors are not receiving the distributions originally contemplated by the Debtor, it is unwilling to grant this request given the circumstances in this case.

Based on the foregoing, the Court concludes that WGB's services resulted in an identifiable, tangible, and material benefit to the Debtor's estate. Further, the actual, necessary fees and expenses WGB seeks meet the requirements set forth in Section 330 and applicable Fifth Circuit law, and the Court finds no cause to either increase or decrease the total award. Accordingly, WGB is entitled to payment of all of the fees and expenses it requests in the Fee Application. It is therefore:

ORDERED that the Fee Application is granted in its entirety.

---

11. "[S]ecured liability was paid and no unsecured deficiency claim arose; so, that is some identifiable, tangible and material benefit. The time with regard to this matter is, however, excessive when viewed against the only benefit being the payment of a secured creditor. The real benefit was to the Debtor[,] as the property was more an issue in his divorce case than in his bankruptcy case. The amount of fees requested [is] $12,005.00. The Court will allow fees of $3,000.00 . . . ." *Id.*